Good morning. May it please the Court, my name is Molly Quinn, and I represent the appellate Yuri Chachanko. We're asking the Court to reverse the order denying Mr. Chachanko's motion for a reduction in sentence under 18 U.S.C. 3582 C1a, commonly known as Compassionate Release. Mr. Chachanko showed extraordinary and compelling reasons for a sentence reduction under several provisions. I would like to start with subsection B6, the unusually long sentence provision. Robert R. Reilly Counsel, I have an initial question prompted by your 28J letter. Does your position depend upon the retroactive application of that subsection? Molly Quinn To clarify the question, Mr. Chachanko's unusually long sentence does depend on the changes to the 924C stacking provisions in the First Step Act. So I think the answer is— Robert R. Reilly And would that depend on the legitimacy of a retroactive application of those changes? Molly Quinn I think if this Court finds that subsection B6 is completely invalid, that would undermine this portion for extraordinary and compelling reasons. Is that— Robert R. Reilly Yes, thank you. Molly Quinn But we do have the two other bases, the medical circumstances and then the, as the Commission called it, other reasons. To get back to subsection B6, this is the unusually long sentence provision for extraordinary and compelling reasons. The District Court found that Mr. Chachanko satisfied all but one requirement of this provision. The District Court found that his 924C, his 25-year 924C sentence in the District of South Dakota was unusually long, and it was—there was a gross disparity between that sentence that the Court was forced to impose at the time of his sentencing and the, as the District Court found, the 10-year mandatory consecutive sentence it would have had to impose today. And the District Court found, again, that that was unusually long and there was a gross disparity, and also, importantly, that Mr. Chachanko's individualized circumstances supported a reduction to what it found to be a 10-year mandatory minimum. The District Court found, of course, that Mr. Chachanko did not satisfy the requirement of the subsection B6, that he had served at least 10 years of the term of imprisonment. And at the time of the District Court's order, Mr. Chachanko had served just over 18 years of his federal sentences. And it is true, his federal sentence is made up of or consists of robbery and 924C sentences imposed in the District of Montana, and then the 25-year—at the time, mandatory 25-year consecutive sentence for another 924C offense in the District of South Dakota. What do you make of the definite article—I think that's what they call it in grammar—of the, and it appears three times, at least three times, the term of imprisonment, which is a reference back to a term of imprisonment, the court, referring to a particular court, and one of the ones that nobody focused on, but I think is very interesting, the defendant, which implies not the prisoner, like in habeas, but the defendant, which implies a particular case, because you're only a defendant in a particular case. And so what do you make of that? Doesn't that all suggest that we're talking about each—we're talking about a single sentence from a single case, and you've got to go back to that court to ask for it? I don't think it necessarily does. I understand the question, or I understand why you're asking the question. I think if you look at that full phrase, you start with the defendant, received an unusually long sentence and has served at least 10 years with a term of imprisonment, I think it's fair to read that as the term of imprisonment referring back to the unusually long sentence. And here, in this unique case, that is an unusually long sentence because of the timing, the very particular timing and the multiple 924C convictions. And I do want to—I think this is a good time to kind of bring up, when we look at the 1B113 as a whole, if a sentencing commission intends the term of imprisonment to refer to a particular term or the term imposed by the court or the term sought to be reduced, it says so explicitly, and it does that in subsection B4, which applies where there's the defendant is a victim of abuse. And that does not appear in subsection B6. And so that textual sentence, I think, tells us that the commission can use the term of imprisonment and then modify it by sought to be reduced, as it did in B4, but didn't do that in B6. So under the text of the guideline, it doesn't necessarily refer to this particular sentence imposed. But doesn't that sort of turn the these into a's, at least some of the ones I was talking about, particularly the court instead of a court, which to me is—and again, the defendant is also helpful there, but mostly the court, which refers to, I think, a particular court. And it seems very odd, in light of the language, to allow—I think it was a Judge Schreier—Judge Schreier to modify a sentence imposed by the District of Montana, potentially, or something like that, which could happen, I think, under your—if you had served 10 years, right? Let's suppose that the sentence is 30 years for sentence number one. He's not done with it. Schreier's got a consecutive sentence later. You go to Judge Schreier and you say, well, I've served 10 years of that sentence. I've got your sentence later. Why don't you go ahead and modify that earlier sentence? I've been there 10 years. I think that would be fine under your interpretation. Doesn't that present a problem? It would present a problem, but I disagree that it would be fine under our interpretation. And I think there's a difference, and this kind of comes up with the Gamble case and all of those cases, that there is a difference between deciding, does this court have the power to reduce a sentence, and has this defendant satisfied these particular eligibility requirements? And in this context, he has served at least 10 years, is a particular eligibility requirement set out by the Commission. And the question of whether the court can do that is a very different question. And I don't think, I think in this case, this is only going to come up with the second in time of a consecutive sentence, in terms of second in time, in terms of when it was imposed, not when the offense conduct was. So if he's, let's just suppose, let's do slightly different facts, which is let's suppose instead of, I think he's done with his Montana sentence, but let's suppose that he's at year 10 exactly. And he goes in and he says, well, I've served 10 years and he says, I want a sentence reduction on my second sentence. But he's serving the Montana sentence. Can he then, even though he's serving the Montana sentence, can he sort of preemptively then go to Judge Schreier and say, I want you to do something with that other one, even though she hasn't even started his South Dakota sentence? Yes, I think he could, but that still doesn't have the effect of reducing the first term of imprisonment, because these aren't necessarily consecutive sentences, in that the difference between this scenario and the scenario the courts were addressing in retroactive guideline context, and I call it Section 404, the retroactivity of the Fair Sentencing Act, those cases arose out of a situation where the sentence sought to be reduced was the first in time. And if you just kind of counted arrest date or when the sentence started to the date of the motion, that person, by any count, had fully served that first sentence. This is a second sentence. And so the district court, at any time if this district court said, I'm going to reduce the sentence to 10 years consecutive to the Montana sentence, the Montana sentence stays exactly the same. And so it doesn't have that effect. No, that's fair. It just, it seems odd to allow somebody to go in and reduce a sentence saying I've served 10 years when they haven't served a single day of the sentence that they're trying to reduce, if that makes sense. I understand, and I would have two answers to that, as you called it, an oddity. The first, again, is looking at, I would go back to that, the differences between subsection B4 and subsection B6 in the guideline. The B4 says, while in custody serving the term of imprisonment sought to be reduced. And then subsection B6, the one we're talking about, which says, has served at least 10 years of the term of imprisonment, comma, and then moves on. The Sentencing Commission could have, but did not, include similar language. And then I also think that 18 U.S.C. section 3584C, which talks about how sentences, consecutive sentences are treated by the Bureau of Prisons, and I know that the Court has said, well, that says administrative purposes and these are judicial purposes. But really we're talking about here in terms of has this person satisfied one of a list of criteria for eligibility, whether a person, how much time a person has served is a matter that's determined by the BOP. The Supreme Court in this Court has said that pretty definitively, that the BOP calculates credits. So I would like to reserve. You may. Thank you. You may for sure.  Thank you. May it please the Court, Counsel. My name is Catherine Rich. I represent the United States from the District of South Dakota. We're asking this Court to affirm Judge Schreyer's decision determining that Mr. Chachanko did not prove that he was eligible for the so-called compassionate release under 3582C1A. I just want to point out that I agree with Judge Grise, your question, that the decision in the other panel would undermine the petitioner's request under B6. We agree with that. So depending on what comes of that could impact this particular request here. I want to turn to you, Judge Strauss, your question. The United States' position is that determination, the defendant's position would absolutely result in the mathematical problems where a district court in a second case could end up affecting a sentence in the original case, you know, the first in time sentence case. The defendant's position here, the petitioner's position struggles to retain the meaning between consecutive and aggregation. If you start allowing the aggregation, then the, you know, the underpinnings of consecutive sentencing start to fall away. But what do you do, and this is the oddity the other way, what do you do when, let's say it's just Judge Schreyer and she had both of these cases, right? Or they were all tried in one proceeding. So she says you get 10 years or 15 years on one, you get 15 years on the other, you've served the 10 years. The fellow comes in and says, the hypothetical defendant comes in and says, well, I want that second sentence reduced because I've served my 10 years. Well, you have the same court, the same defendant, and arguably the same term of imprisonment. Well, I think the decisions that this Court and other circuit courts have looked at under the 3582 C2 cases are instructive since we've only been grappling with this since the 2023 amendments, where they have noted that there is a difference if a defendant doesn't know or a court never explicitly decided which, which sentence comes first. So there's some, some decisions where it was the same court but completely separate proceedings. Like, for example, it was a conduct committed while in custody. And so where there was no question which came first on the consecutive sentencing. But then there were other cases where it might matter if, if it all happened in one proceeding, one sentencing, you know, one indictment, was there one PSR, and there was really no explicit decision that, you know, the decision that the sentence come, this one comes first and that one comes second. Now, you know, rules of fairness kind of start to apply. Nobody really knows, right? So maybe we should give them the benefit of the doubt. But here, this consecutive sentencing must retain some meaning that they account for separate harms. And the judges in Montana and, and then Judge Schreyer here in South Dakota were sentencing for separate harms. And so I, I did some math last night. Mr. Chuchanko has served approximately 10 months of, to date, of his South Dakota sentence, of his 30 years, based on what the calculations of BOP were at the time that we last had records available. So he, so had Judge Schreyer granted this motion or this, or whatever second judge granted a motion at the time he had made it, he, he would not have served a single day yet of his South Dakota sentence. And that's, you know, that's, that's problematic in that that sentence is meant to redress the harms that he caused as part of that, as part of that, you know, underlying plea agreement. Do you want to address counsel's, I think it's a B-4 argument? Sure. I think, as I said, we've only had these since 2023. And the way that B-4, I think is, is a matter just of the sentencing structure, the way that they were kind of trying to, to refer back to, you know, the, the factual circumstances that could arise under a, the motion under B-4. What I think is more important here is when Judge Shost, you brought up the, the use of the term of imprisonment. And the district court did a really thorough analysis of the use of that definite article in the order, which was, you know, 46 pages, noting it was the term of imprisonment, and that was the same language used in the statute by Congress, the term of imprisonment. And also the unusually long sentence. And the district court did the analysis, not on, was 519 months an unusually long sentence, but was the 300 months an unusually long sentence. And of course, and I think that should be what it is, because Congress said you have to consider the 3553A factors. And the, what the South Dakota district court knows about the factors of the case is a paragraph in the PSR. His conduct in, in that situation. So if, under the defendant's position, the, the second judge, South Dakota judge, cannot really consider the 3553A factors. So the language in subsection B-6 has to refer back to the crime for which this court sentenced this defendant, the defendant at issue here. And so I think the, the B-4 language, I don't, I don't think it's helpful to your point, Judge Bent, to, to read too much into that, because the plain language of B-6 and the plain language of 3582C1A helps more in that it refers to the court, the term of imprisonment, and the defendant, and the factors for that offense for which he's being, you know, being sentenced. Can I ask a variation of, I'm going to ask a variation of the earlier question, which is, as, as you were talking, it kind of made me think of the fact that what if they arise out of the same transaction or occurrence, but it's clear that they're, which one's first, which one's second. And so you have, let's say, 15 years on each. One of them is the escape from the burglary of a bank or whatever. In that situation, you can consider the 3583, 3553 factors because it's the same court coming out of the same transaction. Would that be different in order, I know that's not this case, but would that be different in your view? Well, I, I think it could be because again, this court and other courts have said it matters that it was the same judge who, who is able to consider the same realm of, realm of conduct. Now, if the sentence is a mandatory consecutive based on a directive from, from Congress, which, which I acknowledge it was here because of the stacking laws at the time under 924C, you know, that, that might make a difference if that, if that were the scenario. But in this case, I don't think it does. Yeah. So, oh, and the, and the other, the other point I want to make was on the, the indefinite articles is that it also ties with the later clause in B-6 where it says the sentence being served, which I think that also goes back then to, you have to look at the sentence that this court, which, you know, Judge Schreier placed on them. And then I, I think Judge Strauss, your, your point is more closely akin to the Gamble decision of where this court ruled where that was, I think, I believe the same judge. What do, you know, I want to go back to Judge Graz's earlier question really quickly. The government, so we have that whole Crandall issue and, and, and you kind of allude that, I think, in your response to him. But I didn't, I didn't see the government really arguing that. And it is an issue. We've got another case actually where Crandall is an issue. I don't remember what district it's out of. But I don't know that we could decide it on that issue as appealing as it may be to avoid the much more difficult sort of statutory interpretation issue. Sure. We, we, we argued that below to the district court and then the district court did not, just did it at a footnote, footnote seven of the order that was not deciding it based on that basis. So we didn't, you know, continue to pursue that argument and appeal because this case factually was resolved around the 10-year issue. I see. So, but I still believe this court could, I mean, we, we had the arguments below and I think they're all legal arguments. And so I believe this court could decide it on that basis if it wanted to. It's not in your brief show at all, right? As I recall. No, no, it was just. You didn't brief it. I wouldn't have briefed it. You, the government, right. Proceed. Yeah. And I just would point on the, the 3584C argument. I was unable to find any, any court that has found that, that administrative purposes would, would, that this judicial determination of resentencing would be administrative purpose. So we would urge this court not to pursue that and ask this court to affirm the decision of the district court below that Mr. Tuchenko has not proved he is eligible for a sentence reduction. Thank you. Thank you for the argument. Ms. Quinn. Thank you. I'd like to start by reiterating that a second-in-time district court who has imposed a consecutive sentence cannot and will not affect a previously imposed or first-in-time imposed sentence, that that sentence was ordered to run consecutive to. And I think this court is in the same position now that it was back in July of 2008 where Mr. Tuchenko came having done a robbery spree that started in South Dakota, ended in Montana. Montana sentenced him first, gave the sentence it deemed appropriate, and then he was charged after that for the first-in-time conduct in South Dakota. And the district court knew everything then that it would know now about his Montana conduct. And then that same district court said, looking at all of this, I think a 10-year sentence consecutive to the Montana conduct would be appropriate. And whatever the district court does with its South Dakota sentence, the District of Montana sentence will remain exactly the same and it will not be reduced. And I think maybe part of the issue is that our interpretation depends on the term of imprisonment can mean one thing in this context under subsection B-6 in something else in other contexts, like the enabling statute that allows the court to reduce the term of imprisonment. And we know that from the Supreme Court from the Barber v. Thomas case in the context of good time credits, that this, in particular, term of imprisonment is one of those phrases that can carry different meanings depending on the context. My time is up. I would ask the Court to reverse. Thank you. Thank you both for the arguments. Case 24-2440 is submitted for decision.